IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI῀I

| | | |
|---|---|---|
| RODNEY H.S. KIM, | ) | CV. NO. 10-00197 DAE-KSC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA; | ) | |
| UNITED STATES PROBATION | ) | |
| OFFICE; T.J. MAHONEY & | ) | |
| ASSOCIATES, a Hawaii | ) | |
| Corporation; FEDERAL BUREAU | ) | |
| OF PRISONS, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

ORDER GRANTING FEDERAL RESPONDENTS' MOTION TO DISMISS
AND GRANTING MOTION FOR JOINDER;
<u>AND VACATING HEARING DATE</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motion and the supporting and

opposing memoranda, the Court **GRANTS** Federal Respondents' Motion to

Dismiss. (Doc. # 14.)  The Court further **GRANTS** Respondent T.J. Mahoney &

Associates' Motion for Joinder.  (Doc. # 27.)  The hearing on these motions is

hereby **VACATED**.

<u>BACKGROUND</u>

On April 2, 2010, Petitioner Rodney H.S. Kim filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. # 1.)  Petitioner requests: (1) that he be released from the halfway house Mahoney Hale to home detention; (2) that this Court find that the Federal Bureau of Prisons ("BOP") had officially determined that Petitioner fell within the intended class of the Second Chance Act of 2007 and granted release to home detention; and (3) a refund of any subsistence payments paid to Mahoney Hale while confined there.  The petition is filed against the United States, U.S. Probation Office, and the BOP (collectively, "Federal Respondents") and T.J. Mahoney & Associations, which is owner and operator of Mahoney Hale.

The Second Chance Act of 2007, effective April 9, 2008, and codified at 42 U.S.C. §§ 17501 et seq., was enacted to, among other things, "break the cycle of criminal recidivism" and "rebuild ties between offenders and their families."  <u>Id.</u> § 17501(a).  Section 231(g) of the Act directs the Attorney General to "conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a [BOP] facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced."  <u>Id.</u> §

17541(g)(1)(A).  The Attorney General "may release some or all eligible elderly offenders from the [BOP] facility to home detention."  Id. § 17541(g)(1)(B) (emphasis added).   An eligible elderly offender is defined by statute to mean, among other things, an offender in the custody of the BOP who is not less than 65 years of age, serving a term of imprisonment that is not life imprisonment based on conviction for an offense that does not include any crime of violence or sex offense, and has served the greater of 10 years or 75 percent of the term of imprisonment.  See id. § 17541(g)(5)(A).

In the event an elderly offender is placed on home detention under the pilot program, the Attorney General is to monitor the offender while on home detention and must report to Congress on the success of the program.  Id. § 17541(g)(4).

On April 29, 2010, the Court received a memorandum correspondence from the U.S. Probation Office ("PO") in which the PO informed the Court on several matters concerning the Second Chance Act as it relates to Petitioner's request.  (Doc. # 15 Ex. A.)  As stated by the PO, Section 231(g) of the Act "directs the BOP to conduct a pilot program . . . to determine the effectiveness of removing certain elderly offenders from Bureau facilities and placing them on home detention/home confinement until the expiration of their prison terms.  The

effective dates of the BOP pilot program are from 10/1/2008 through 9/30/2010."
(Id. at 2.)  According to the PO, only 37 inmates nationwide have received BOP
approval to participate in the pilot program, and only 4 inmates are actually
participating.  (Id. at 3.)

Records from the PO indicate Petitioner is currently scheduled to
commence supervised release on August 6, 2010, and Petitioner's prior request for
an earlier release date was denied.  (Doc. # 15 Ex. A at 3.)  This earlier release
request was apparently denied for several reasons, including the reason that the PO
does not have the abilities to respond to electronic monitoring violations on the
island of Maui, where Petitioner apparently would like to be released on home
confinement.  (Id.)  The request was also denied because Petitioner was
purportedly not designated as an eligible participant for the Elderly Offender Home
Detention Program, although there are contradictory statements in the record on
this matter.  Petitioner's second request for early release to an Oahu residence was
deemed unsuitable because the individual with whom Petitioner would reside had a
prior history of arrests and had expressed reservations about Petitioner residing at
this residence.  (Id.)

On May 7, 2010, Federal Respondents filed the instant Motion to
Dismiss the petition for lack of subject matter jurisdiction.  (Doc. # 14.)

4

Respondent T.J. Mahoney & Associates filed a motion for joinder in the motion to dismiss.  (Doc. # 27.)  On May 7, 2010, T.J. Mahoney & Associates filed an Amended Response and Opposition to the petition.  (Doc. # 20.)  On May 17, 2010, Petitioner filed a Reply in Opposition to all Responses filed.  (Doc. # 25.) On May 27, 2010, Federal Respondents filed a Reply in support of their motion to dismiss.  (Doc. # 26.)  On June 25, 2010, Petitioner filed a Motion for Judgment on the Pleadings, which also include substantial opposing argument to the instant motion to dismiss.  (Doc. # 31.)  The motion for judgment on the pleadings was severed from the opposing memorandum and stricken by Court order, with the opposing arguments to be considered along with the motion to dismiss pursuant to this Court's discretion despite the fact that the Court might have stricken the document in its entirety as an impermissible supplemental briefing.  (Doc. # 35.) Federal Respondents filed a Reply to this supplemental opposing memorandum on July 13, 2010.  (Doc. # 37.)

DISCUSSION

Federal Respondents argue that Petitioner erroneously filed this action as a § 2241 petition and should have instead filed a civil rights action to challenge the conditions of confinement.  Regardless of whether this Court evaluates

Petitioner's request as a § 2241 petition or liberally construes it to be a  civil rights

action, the Court must deny Petitioner's request for the reasons set forth below.

       The declaration of Mark Wilfing, the Community Corrections

Manager ("CCM") for the BOP, confirms that Petitioner was "considered for and

found eligible to participate in the BOP's pilot program."[1]  (Wilfing Mot. Dec.

¶ 5.)  According to Wilfing, when an offender is found eligible to participate in the

Second Chance Act, the institution sends a referral packet to the CCM according to

BOP guidelines.  (Id. ¶ 5.)  Upon receiving the packet, the CCM then reviews the

referral "in light of the programming options available in the inmate's release

destination area."  (Id.)

       Although Petitioner was eligible under the program, neither of

Petitioner's requested addresses were approved by the PO.  (Id. ¶ 6.)  Wilfing

stated that "neither contract providers nor the United States probation office has

agreed to provide the supervision necessary to effectuate Petitioner's home

detention" to either the Maui residence or Petitioner's selected Oahu residence.  As

discussed above, the PO informed the Court that the PO does not have the ability to

---

[1] There is some discrepancy in the record as to whether Petitioner has been
granted release to home detention by the BOP.  The PO had informed the Court by
that Petitioner was not designated by the BOP as an eligible participant, (Mot. Ex.
A at 3),  but this statement is contradicted by the BOP's own statement.

respond to electronic monitoring violations on the island of Maui, but that

Petitioner is eligible for release from Mahoney Hale on the island of Oahu if he can

find an appropriate residence.[2]  (Mot. Ex. A at 3.)

      According to Wilfing, the BOP supervises inmates in home

confinement through contracts with community providers or through local United

States probation offices."  (Wilfing Mot. Dec. ¶ 7.)  Because BOP has not

identified an entity able to facilitate the supervision requested by Petitioner,

Petitioner has not been released.  (Id.)

      Petitioner argues that because he is eligible for release under the

Second Chance Act, Federal Respondents and T.J. Mahoney are in violation of the

Second Chance Act by failing to order release and monitoring at Petitioner's

locations of choice.   Petitioner believes he has an absolute right to release because

he has been deemed eligible.

---

[2]  T.J. Mahoney has responded to Petitioner's claim only to inform the Court of the "cost-prohibitive relief sought by Petitioner" should the Court order release to the Maui residence.  (T.J. Mahoney Resp. at 2.)  T.J. Mahoney claims that it will incur additional expenses in excess of $26,352 per year to monitor Petitioner if he is granted home confinement on Maui as opposed to Oahu.  (Id.)  This value is derived, in part, from the expense to travel to Maui to visit Petitioner's home and place of employment once a week.  (Id. at 3.)  T.J. Mahoney does not offer argument as to the legality of Petitioner's request.

This is a case of first impression in this Court, and it appears that this issue has not been directly addressed by other courts in the Ninth Circuit. Upon review of the statute and case law available, the Court disagrees with Petitioner's contention that he has the absolute right to release under these facts.

In the first instant, it appears this Court does not have the authority to order a particular elderly offender be allowed to participate in the pilot program. It is the BOP, not a Court, who has the authority to determine whether Petitioner has satisfied the statutory requirements to participate in the program. For instance, two of the statutory requirements for release is that the BOP "has determined that release to home detention . . . will result in a substantial net reduction of costs to the Federal Government" and that the BOP has determined that the elderly offender will "be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention." 42 U.S.C. § 17541(g)(A)(vi)-(vii).

Of significance to this action, Section 231(g) of the Second Chance Act directs the Attorney General to conduct this pilot program but grants the Attorney General considerable discretion in implementing that program and determining which, if any, elderly offenders are released on home detention. See id. § 17541(g)(1)(B). The statute provides that "in carrying out a pilot

8

program . . . the Attorney General <u>may</u> release some or all eligible elderly

offenders from the Bureau of Prisons facility to home detention."  <u>Id.</u> (emphasis

added).  The use of the term "may" in a statute indicates a grant of discretion to the

administering agency.  <u>See</u> <u>Lopez v. Davis</u>, 531 U.S. 230, 240-41 (2001).

   Moreover, the statute does not provide the courts with authority to

interfere with the authority of the Attorney General to administer the program.  It is

the Attorney General who is directed to "monitor and evaluate each eligible elderly

offender."  42 U.S.C. § 17541(g)(4).  This Court has been unable to locate any case

in which a court has directed the BOP and Attorney General to release a particular

offender to home release under this pilot program.  The Court has located only two

unpublished memorandums on this point.  The Middle District of Florida has

concluded that it does not have the authority to direct the BOP to release a

petitioner to a halfway house under the terms of the Second Chance Act.  <u>United</u>

<u>States v. Zindadil</u>, 2010 WL 1002654, at *2 (M.D. Fla. Mar. 18, 2010.)  The

District of Minnesota has concluded that an offender has no affirmative right to be

released to a halfway house or home confinement under the Second Chance Act.

<u>Stanko v. Rios</u>, 2009 WL 1303969, at *5 (D. Minn. May 8, 2009).

The Court's independent review of the Act leads it to agree that Petitioner does not have an absolute right to be released to home confinement. Even if the BOP identifies an offender as eligible for release to home confinement, there is no statutory obligation for such release to actually come to fruition, insofar as the Second Chance Act is concerned.  See 42 U.S.C. § 17541(g)(1)(B).  This is within the sound discretion of the Attorney General.  This Court does not have the statutory authority under the Second Chance Act to order release of an elderly offender when the BOP, in consultation with Mahoney Hale and the PO, has determined that Petitioner's residences of choice are not appropriate residences for release under the Second Chance Act.

## CONCLUSION

For the reasons stated above, the Court GRANTS Federal Respondents' Motion to Dismiss; and GRANTS T.J. Mahoney & Associates' Motion for Joinder.  The petition is hereby dismissed with prejudice as against all

Respondents.  The Clerk of the Court is hereby directed to enter judgment in favor

of all Respondents.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 14, 2010.



_____
David Alan Ezra
United States District Judge

Kim v. United States et al., CV No. 10-00197 DAE-KSC;
ORDER GRANTING FEDERAL RESPONDENTS' MOTION TO DISMISS
AND GRANTING MOTION FOR JOINDER; AND VACATING HEARING
DATE